UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HENRY McDOUGALL, | No. CV-06-0272-AAM |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are plaintiff's motion for summary judgment (Ct. Rec. 14) and the defendant's motion for summary judgment (Ct. Rec. 17).

## JURISDICTION

Henry McDougall, plaintiff, applied for Supplemental Security Income benefits ("SSI") on January 21, 2003. The application was denied initially and on reconsideration. Plaintiff, represented by counsel, then appeared and testified before Administrative Law Judge ("ALJ") James A. Burke on April 26, 2005. William H. Weiss testified as a vocational expert. At the hearing, the ALJ issued a bench decision in favor of the plaintiff, finding him disabled. The Appeals Council conducted a review of this decision based on its own motion and on August 11, 2005, issued an order vacating the ALJ's decision and remanding the case for further proceedings. On December 14, 2005, ALJ Thomas Tielens conducted an administrative hearing at which the plaintiff, represented by counsel, appeared and

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      1**

testified. Also testifying at the hearing was Jenipher Gaffney, a vocational expert. On March 2, 2006, ALJ Tielens issued a decision denying benefits. The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner. This decision is appealable to federal district court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the plaintiff's and defendant's briefs, and will only be summarized here. At the time of the hearing, plaintiff was 53 years old. He has a 10th grade education. He does not have any past relevant work experience. Plaintiff alleges disability due to a variety of physical and mental impairments.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g)...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*,

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT-        2**

877 F.2d 20, 22 (9th Cir. 1989), quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in finding that plaintiff has no exertional limitations and erred in his finding regarding the plaintiff's mental residual functional capacity (RFC).

## DISCUSSION
### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

/ / /

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      3**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the
///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT-    4**

national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

ALJ Tielens found that plaintiff does not have any "severe" physical impairments which would cause him exertional limitations. The ALJ found that plaintiff does have dysthymic disorder, borderline verbal IQ, an antisocial personality disorder, and a history of alcohol abuse which are "severe." The ALJ found, however, that none of these "severe" impairments, considered separately or in combination, meet or are medically equivalent to any of the impairments listed in 20 C.F.R. § 404 Subpt. P, App. 1. The ALJ found that plaintiff has the following residual functional capacity (RFC): no exertional limitations; can perform work involving no fine hearing and only occasional fine fingering; limited to simple repetitive work involving no public interaction and only occasional interaction with co-workers. Based on the testimony of vocational expert Gaffney, the ALJ found that this residual functional capacity does not preclude plaintiff from performing work that exists in significant numbers in the national economy, including hand packager and warehouse jobs. Accordingly, the ALJ concluded that plaintiff is not disabled.

**SEVERITY OF PHYSICAL IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §416.908.

Step two is a de minimis inquiry designed to weed out non-meritorious claims at an early stage in the sequential evaluation process. *Bowen*, 482 U.S. at 148. See

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-       5**

also *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two inquiry is a de minimis screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158. "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. §416.921(b).

ALJ Tielens asked the plaintiff why he was unable to work and he responded "my back, my shoulder, my neck[,]" as well as difficulties with shortness of breath, sweating, and vision. (Tr. at p. 9). In November 2000, Susan Powell, M.D., a family practitioner in Okanogan, Washington, completed a Washington Department of Social Health Services (DSHS) "Physical Evaluation" on behalf of the plaintiff. She indicated that plaintiff presented with pain in the upper back, neck and left shoulder. Plaintiff also complained of left arm weakness and tingling of the 3rd and 5th fingers on both of his hands. Dr. Powell noted the plaintiff was obese,; that he had a normal range of motion on his neck with pain on palpation of C6-C7 spinous processes; that his upper extremity strength was 5/5 bilaterally except for a slightly decreased grip strength on the left; that he had a decreased range of motion of the left shoulder over the left AC joint; and that his neck trays showed mild to early moderate degenerative changes of the lower cervical levels with no bony encroachment on the neural foramina. Her diagnosis was mild to early moderate C-spine degenerative disease and left shoulder pain. She rated these as "mild" impairments which did not significantly interfere with plaintiff's ability to perform basic work-related activities. (Tr. at p. 306), although she also indicated the plaintiff was limited to "light" work

**ORDER GRANTING DEFENDANT'S  
MOTION FOR SUMMARY JUDGMENT-        6**

(lifting 20 pounds maximum and frequently lifting and/or carrying up to 10 pounds; frequent walking or standing, or sitting most of the time with occasional pushing and pulling of arm and/or leg controls). (Tr. at p. 307). Dr. Powell completed the DSHS "Physical Evaluation" form based on her initial assessment of the plaintiff's condition.

In March of 2002, plaintiff was seen for a DSHS physical by Barbara Bahr, an ARPN (Registered Nurse Practitioner)with the Mid-Valley Hospital in Omak, Washington. Based on her first visit with the plaintiff, she diagnosed him with "neuro-jerking," alcoholism, mild dementia, right hand numbness, allergies, obesity, and weak ankles due to a previous fracture. She indicated that all of these conditions were the result of "years of abuse." (Tr. at p. 308). It is apparent she was referring to alcohol abuse. (Tr. at p. 258). It is also apparent that the diagnosis of right hand numbness was due to plaintiff's subjective reporting of the same. (Tr. at p. 258). Nurse Bahr indicated the conditions diagnosed by her were "moderate" to "marked" in their severity and further indicated that she considered the plaintiff as being limited to "sedentary" work. (Tr. at pp. 308-09).[1]

In February 2003, plaintiff was seen at the Mid-Valley Hospital by Jennifer Brunsdon, M.D., for a DSHS physical. This was plaintiff's first visit with Dr. Brunsdon who suggested that plaintiff continue seeing Barbara Bahr, but who indicated he wanted to see the doctor. According to Dr. Brunsdon, plaintiff was a "vague historian" who complained of fatigue and shortness of breath, but did not

---

[1] A "moderate" limitation is one which significantly interferes with ability to perform one or more basic work-related activities. A "marked" limitation is one which very significantly interferes with ability to perform one or more basic work-related activities. (Tr. at p. 308). "Sedentary" work involves lifting 10 pounds maximum and frequently lifting or carrying articles such as dockets, ledgers, and small tools. It involves sitting, although a certain amount of standing and walking may be involved. (Tr. at p. 309).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      7**

complain of any pain. Based on her first visit with the plaintiff, Dr. Brunsdon diagnosed the plaintiff with possible sleep apnea, depression, and a possible alcohol-related cognitive impairment. (Tr. at p. 254). Plaintiff did not complain to Dr. Brunsdon about any orthopedic impairments at this time. In March 2003, the plaintiff returned to see Dr. Brunsdon, this time complaining about low back pain which had been present for about a week following his lifting of a heavy object. Dr. Brunsdon diagnosed the condition as "muscular low back pain." (Tr. at p. 262).

In June of 2003, plaintiff saw yet another physician for a DSHS "Physical Evaluation." Michael D. Bordner, M.D., however, did not diagnose the plaintiff with any type of physical impairment, other than a fracture of the right fifth metacarpal which occurred on June 4, 2003. His other diagnoses were depression and post-traumatic stress disorder. (Tr. at p. 279). According to Dr. Bordner:

> [Plaintiff] is unable to work due to severe depression and posttraumatic stress disorder. He really has the inability to work with other people. He cannot take orders and this has been a long-standing problem. He states that he was abused as a child quite severely by his brothers and sisters who were his primary caretakers. He is very suspicious of other people and has a difficult time taking direction from others.

(Tr. at p. 279). Dr. Bordner reported there was "no weight loss, night sweats, fevers, some pain in the right lateral of the fifth metacarpal, [n]o cough, no fever, no gastrointestinal or genitourinary problems" and that "[a]ll other review of systems are negative." (Tr. at p. 279).

The plaintiff had arthroscopic surgery on his right knee in late 2003. He saw Edward L. Van Tassel, D.O., for an evaluation in December 2003, three months after the surgery. According to Dr. Van Tassel:

> Examination today shows a mild joint effusion of the right knee. There is no erythema or sign of complications. The calf is soft and nontender. He has full range of motion of his knee. Anterior drawer and Lachman's is minimally positive. Posterior drawer is negative. Collateral ligaments are intact with no laxity noted. McMurray's test is negative.

(Tr. at p. 339).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-       8**

In June 2004, plaintiff was seen by Dr. Brunsdon again. Her chart note reflects that plaintiff advised he had "been out cutting wood quite a bit lately" and that "usually he gets in better shape during the summer when he is cutting wood." (Tr. at p. 343).[2] He saw Dr. Brunsdon again in August 2004. He complained of some shortness of breath. It was noted that he had used Albuterol in the past and that it had helped, but that he was not using it currently. Furthermore, while the plaintiff did have a history of sleep apnea, he was not using his CPAP (Continuous Positive Airway Pressure) because "[h]e is actually going camping and he spends most of the summer camping out, so he will not be using his CPAP." (Tr. at p. 343). Also, approximately in August 2004, plaintiff was seen by Ric Winstead, M.D., for hearing problems. Dr. Winstead observed that plaintiff was in "no acute distress whatsoever" and that he was a "slightly poor historian." Dr. Winstead diagnosed the plaintiff with chronic right tympanic membrane perforation and hearing loss. (Tr. at p. 341).

In February 2005, plaintiff was seen by Charles Adams, M.D., for a refill of psychiatric medications. According to Dr. Adams:

> He is alert, cooperative, oriented as to time, place, and person, and is in no acute distress. The most distressing thing was that he has now moved from Malot to Okanogan, broken up with his girlfriend or wife, and no longer has automobile transportation. He walked to Rite-Aid in Omak yesterday to be turned away because he needed doctor okay for refills. The patient now faces walking back or switching drug stores.

(Tr. at p. 414). With regard to examination of plaintiff's extremities, Dr. Adams noted that plaintiff had free range of motion of all extremities and that he walked well as attested to by his trip to Omak and back on foot. (Tr. at p. 414). At the administrative hearing, plaintiff acknowledged this was a walk covering three miles. (Tr. at p. 55).

---

[2] June and July 2004 "Progress Notes" from Okanogan Behavioral Health Care quote the plaintiff as saying he was "out in the woods now cutting firewood." (Tr. at pp. 387-389).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT-      9**

An ALJ cannot reject a plaintiff's statements about pain and physical restrictions merely because they are not supported by objective evidence. *Tonapeytan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Id*. at 1148. See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered:  1) claimant's reputation for truthfulness;  2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition). An ALJ must offer clear and convincing reasons for rejecting a claimant's subjective statements about pain and physical restrictions. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

The record reveals varying diagnoses regarding the nature of plaintiff's physical problems and their severity.  Some of the medical providers noted the plaintiff was a poor historian.  The medical providers who indicated that plaintiff's physical impairments were more than "mild" (Nurse Bahr and Dr. Brunsdon) did so based on their initial assessment of the plaintiff's physical condition.  Furthermore, it is apparent from the above-cited record that plaintiff was engaging in activities inconsistent with "severe" physical impairment, such as cutting firewood, camping and walking three miles.  The record also indicates that plaintiff was not compliant with certain treatment for physical impairments (use of the CPAP).  There is also the matter of plaintiff's work and earning history (Tr. at p. 154), a matter which the ALJ noted at the hearing ("in the last 15 years you've never earned more than $3,000;" "since 1978, I don't think you've earned more than $10,000 total").  (Tr. at pp. 56-57).  The ALJ offered clear and convincing reasons for finding the plaintiff not credible with regard to the "severity" of his physical impairments.

///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        10**

Substantial evidence in the record supports the ALJ's finding that plaintiff does not suffer from any "severe" physical impairment or combination of physical impairments that are "severe" and which cause him any significant exertional limitations.[3]

**MENTAL RESIDUAL FUNCTIONAL CAPACITY**

What the above-cited record does show is that plaintiff has "severe" mental impairments, as found by the ALJ, and that alcoholism has contributed to many of the plaintiff's problems over the years. Starting in January 2003, plaintiff was seen at Okanogan Behavioral Health Care. The initial diagnosis of plaintiff was "Alcohol Abuse." (Tr. at p. 244). There is substantial evidence in the record, however, that plaintiff's mental impairments are not as "severe" as claimed by him.

In July 2003, plaintiff was seen by Lance Harris, Ph.D., a psychologist. He diagnosed the plaintiff with antisocial personality disorder and alcohol abuse in full, substantial remission. He indicated that plaintiff had "moderate" limitations in his abilities to understand, remember and follow complex (more than two step) instructions, to learn new tasks, to relate appropriately to co-workers and supervisors, and to interact appropriately in public contacts. He indicated that plaintiff had a "marked" limitation in his ability to exercise judgment and make decisions. He indicated that all other cognitive and social limitations were "mild" (no significant interference with basic work-related activities). (Tr. at pp. 282-83). Dr. Harris, however, also had this to say about the plaintiff:

> [Claimant] was, as in previous evaluations, evasive, vague, and appeared manipulative of the kind and extent of information he would provide spontaneously, with very detailed questioning required to learn anything that might cast him

---

[3] Plaintiff's hearing and finger manipulation limitations, while physical limitations, are non-exertional limitations in that they are not related to strength. 20 C.F.R. §416.969a(c)(1).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-    11**

> in a negative light or position. When specific questions regarding symptoms were asked, he was inclined to endorse all in a positive (pathological) direction as he has in prior interviews. . . . He was repeatedly queried regarding what kinds of emotional difficulties or problems he might have now. His responses did not indicate the presence of depressed mood, anxiety problems, preoccupation with any events from the past, any form of psychotic symptoms, excessive energy, OC-D [obsessive compulsive disorder], or eating DO [eating disorder]. . . . When asked why he felt he couldn't work now, he said that he couldn't get along with authority, but other than non-specific dissatisfaction with one supervisor giving one instruction for the same task, he was unable to give any examples of how this was a problem. He, instead, focused on the things that allegedly happened to him in the past that made it hard for him to get along with authority, and even when re-directed, still had no examples of problems with authority to offer. When he was queried regarding his work history, he then related a number of physical reasons he couldn't work, saying that he worked for only very brief periods, always in orchards, and always had to quit because he was allergic to the orchard sprays and would start itching. He denied ever having counseling or other psychiatric treatment, but at the end of the interview noted that he was applying for SSI and needed to get money so he could get back on his medications for depression and sleep which he named as Trazodone, Effexor, and Concerta, identifying their purpose. In response to questioning[,] he said he was applying for SSI because he had no work skills, and was not capable of learning new ones because he didn't have his medications. [Claimant] notes full and independent ADL [activities of daily living] functioning including lawn maintenance, pet care, household cleaning, laundry, cooking (at least simple foods), and shopping.[4]

(Tr. at p. 285).

Dr. Harris first saw the plaintiff in November 2001. On that occasion, he diagnosed the plaintiff with panic disorder without agoraphobia and alcohol abuse in full, early remission. At that time, he indicated only "mild" limitations with regard

---

[4] An April 2004 "Progress Note" from the Okanogan Behavioral Health Clinic quoted the plaintiff as reporting that he was doing a lot of "fix it" around the house. (Tr. at p. 380). A May 2004 "Progress Note" quoted the plaintiff as "[s]till doing the cooking and doing some projects around the house." (Tr. at p. 383). In a June 2004 "Progress Note," he was quoted as saying that there were "[l]ots of projects to do around the house." (Tr. at p. 386).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-    12**

to plaintiff's abilities to exercise judgment and make decisions, relate appropriately to co-workers and supervisors, and interact appropriately in public contacts. (Tr. at pp. 314-15). Dr. Harris saw the plaintiff again in November 2002. On this occasion, Dr. Harris diagnosed the plaintiff with personality disorder, not otherwise specified and with antisocial features; alcohol dependence in full, early remission; panic disorder without agoraphobia; and adjustment disorder with depressed mood, mild. He indicated the panic disorder without agoraphobia might be caused by alcohol dependence. (Tr. at p. 318). At that time, he indicated a "marked" limitation with regard to ability to exercise judgment and make decisions, and a "marked" limitation with regard to ability to relate appropriately to co-workers and supervisors. (Tr. at p. 319).

The record is replete with references to plaintiff's continuing struggles with alcohol dependence. For example, in September 2004, plaintiff was brought to the Okanogan Behavioral Health Clinic where he blew a .232 on the Breathalyzer. Plaintiff reported that he had consumed six quarts of rum, indicating the Breathalyzer reading might continue to climb. (Tr. at p. 394). In 2005, plaintiff moved to the Vancouver, Washington area. In May 2005, plaintiff was seen at Mental Health NW in Vancouver. Plaintiff reported that while he had a long term alcohol problem, he had been sober since November 2004. (Tr. at .p. 426). There is substantial evidence in the record that plaintiff's alcoholism is a substantial contributing factor to his cognitive and social limitations.

An ALJ must first conduct the five-step disability inquiry without separating the impact of alcoholism or drug addiction. If the ALJ finds the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to consider the impact of alcoholism or drug addiction. It is only if the ALJ finds the claimant is disabled and there is medical evidence of alcoholism or drug addiction that the ALJ should proceed to determine if the claimant would still be disabled if he stopped using alcohol or drugs. *Bustamante v. Massanari*, 262 F.3d

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-    13**

949, 955 (9th Cir. 2001). Substantial evidence supports the ALJ's determination that plaintiff is not disabled, even considering his alcoholism.

Based on the foregoing, this court concludes that substantial evidence in the record supports the ALJ's finding as to plaintiff's mental residual functional capacity: simple repetitive work involving no public interaction and only occasional interaction with co-workers.

**VOCATIONAL EXPERT HYPOTHETICAL**

"If a vocational expert's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

The hypothetical which ALJ Tielens presented to vocational expert Gaffney reflected all of the plaintiff's non-exertional physical and mental limitations found by the ALJ and supported by substantial evidence in the record. (Tr. at pp. 69 and 70). Based on that hypothetical, the vocational expert testified there were jobs existing in significant numbers in the national and regional economies (hand packager and warehouse worker) which plaintiff was capable of performing. (Tr. at p. 71). The vocational expert testified these are "unskilled" jobs requiring "medium" exertion.[5]

---

[5] "Unskilled" work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. §416.968(a). Thus, even assuming plaintiff is markedly limited in his ability to exercise judgment and make decisions as opined by Dr. Harris, that would not preclude him from performing "unskilled" work.

"Medium" work involves lifting no more than 50 pounds at a time with frequent lifting and carrying of objects weighing up to 25 pounds. One who can perform "medium" work can also perform "light" work which involves a good deal of walking or standing, or sitting most of the time with pushing and pulling of arm or leg controls. 20 C.F.R. §416.967(b) and (c).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      14**

## CONCLUSION

Defendant's motion for summary judgment (Ct. Rec. 17) is **GRANTED** and plaintiff's motion for summary judgment (Ct. Rec. 14) is **DENIED**. The Commissioner's decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this __17th___ of April, 2007.

 s/ Lonny R. Suko for and on behalf of
ALAN A. McDONALD
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-    15**